Dana J. Oliver, Esq. (SBN: 291082)
dana@danaoliverlaw.com
OLIVER LAW CENTER, INC.
8780 19th Street #559
Rancho Cucamonga, CA 91701
Telephone: (855)384-3262
Facsimile: (888)570-2021

Attorney for Plaintiff and Putative Class

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELLY BLAND, individually and on behalf of all others similarly situated, | Case No. |
| *Plaintiff,* | **CLASS ACTION COMPLAINT** |
| *v.* | **DEMAND FOR JURY TRIAL** |
| PLAN4LIFE INSURANCE, LLC and PREMIER LEADS GENERATION LLC and WITT BOBSKI *Defendants.* | |

## CLASS ACTION COMPLAINT

Plaintiff Kelly Bland (hereinafter referred to as "Plaintiff"), individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of her counsel, and on information and belief, as follows:

## NATURE OF ACTION

1.     This case involves a campaign by Plan4Life Insurance, LLC ("Plan4Life") to market its insurance services through telemarketing calls by contacting numbers on the National Do Not Call Registry using a vendor it hired, Premier Leads Generation LLC ("Premier"), in plain violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. (hereinafter referred to as the "TCPA").

2.     The recipients of Plan4Life's illegal calls, which include Plaintiff and the proposed class, are entitled to damages under the TCPA, and because the technology used by Plan4Life makes calls *en masse*, the appropriate vehicle for their recovery is a class action lawsuit.

## PARTIES

3.     Plaintiff Kelly Bland is an individual located in Texas.

4.     Defendant Plan4Life, LLC is a California limited liability company located in California that hired Defendant Premier to make telemarketing calls from this District.

5.     Defendant Premier Leads Generation LLC, is a Missouri limited liability company that makes telemarketing calls.

6.     Defendant Witt Bobski is, the owner of Defendant Premier.

## JURISDICTION AND VENUE

7.     This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq.*

8.     This Court has general personal jurisdiction over Plan4Life because it is headquartered and has its principal place of business in this District. This court has specific personal jurisdiction over Premier and Bobski because they contracted with Plan4Life in a contract for the conduction of the illegal telemarketing at issue on behalf of Plan4Life, a California LLC.

9.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because the telephone calls at issue were sent from this District.

## TCPA BACKGROUND

The National Do Not Call Registry

10.     The TCPA prohibits making multiple telemarketing calls to a residential telephone number that has previously been registered on the National Do Not Call Registry. See 47 U.S.C. § 227(c)(5).

11.     The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. See 47 C.F.R. § 64.1200(c)(2).

12.     A listing on the National Do Not Call Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

## FACTUAL ALLEGATIONS

13.     Defendants are "persons" as the term is defined by 47 U.S.C. § 153(39).

14.     Plaintiff's telephone number, 817-XXX-XXXX, is used for residential purposes and is used for personal purposes.

15.     That number is not associated with a business.

16.     The number has been registered on the National Do Not Call Registry continuously since February 9, 2009.

17.     Despite this, the Plaintiff received at least eleven telemarketing calls placed on behalf of Plan4Life as part of its solicitation campaign with Premier on May 8, 2021, May 18, 2021, June 21, 2021, June 22, 2021, June 25, 2021, June 30, 2021 (four calls), and November 13, 2021 (two calls).

18.     The calls were sent from various "spoofed" caller IDs, including 817-981-5928, 817-980-5825, 754-345-5316, 830-215 9763, 817-945-4988, 262-292-7362, 661-492-6000, and 262-292-7330.

19.     The calls all came from individuals who claimed to be from the illegally and fictitiously named "Senior Benefits" and were calling to sell life insurance policies that would cover "100% of your funeral and burial expenses."

20.     At least two of the calls came from individuals who stated that their names were "Robert" and "Jacob."

21.     The callers all used the same script, however, they would all disconnect after asking the Plaintiff a few questions. The Plaintiff also asked not to receive further calls on June 22, but did.

22.     Then, on June 25, during a call from 817-945-4988, the Plaintiff spoke to a representative, who qualified the Plaintiff for a life insurance policy and then stated that an individual named "Robert Walls" would call Plaintiff back.

23.     True to form, the Plaintiff received a call from Robert Walls on June 30, 2021 from the telephone number 661-492-6000. Plaintiff received four calls from the telephone number that day.

24.     Plaintiff answered one of the calls, and Robert Walls, who stated that he was with the Defendant, Plan4Life, attempted to sell the Plaintiff an Aetna life insurance policy.

25.     Thereafter, the Plaintiff sent a letter in July to Plan4Life and Aetna to ascertain why she was being called illegally, and to request the calls to stop.

26.     In response to this correspondence, the Plaintiff received an email from Witt Bobski, the CEO of Defendant Premier, who confirmed that the calls took place and were sent from his call centers in Pakistan, but told the Plaintiff to sue him:

Ms. Pinn,

Hello there my name is Witt Bobski. I am a partner of Mr. Haris and TeleLance Marketing/ Premier Leads Generation LLC. I have noticed you were stating to my agents Robert and Jacob that you were wanting to pursue legal action for calling you on your phone that was registered on the DNC list. I am located in southwest missouri. I have noticed that we gave you a call on 06/25/2021 to see if you were interested in more information regarding burial coverage insurance plans or final expense insurance plans. According to the phone recording and your answers to each question we asked you were deemed very interested. Along with all your personal information that you willingly provided to us on your own accord at the end of the phone conversation we confirmed today's date along with a very key part to protect everyone from any number on a DNC list. That being said, at the end of the call our agents asked you specifically " Would it be okay if your local licensed agent gave you a Callback to discuss coverage options even if your number is on a national or state do not call list" Listening to the phone recording you stated verbal consent by saying "Yes that is fine." The phone recording between you and our representative will be attached below. Also you should know our call center is in Pakistan registered as a business corporation with the country of Pakistan. The rules of Pakistan with recording phone calls is a one party consent law. We consented to the phone recording. The USA federal law on phone recording is also a one party consent state that we also consented to on our end. I understand you're frustrated with people giving you unwanted calls. We have removed your information from our database from giving anymore future calls. However, I can not guarantee that you will not be receiving more phone calls down the road from other marketing companies. If that does happen if i was you I would try to take legal action from them. As for our company however, since you provided verbal consent along with providing all your personal and contact information also by genuine verbal consent there is nothing for you to stand on in the court of law against us. This is not the first time my company has experienced this nor will it be the last. If you still wish to try and pursue some sort of charge against my company you are more than welcome to. Though I will say that no matter what you're reading off the internet or your lawyer is telling you with the recording of the phone call and you providing us with all your information and you verbally consenting to having your number called even if you are on a national or state do not call list in the federal courts they will drop the case or you will lose the charge. All of my contact information and the phone recording between You and my representative is listed below if you wish to pursue further legal action. Have a great day!

27.     Defendant Plan4Life did not respond to this correspondence.

28.     The calls were not necessitated by an emergency.

29.     Defendant Plan4Life ratified Premier and Bobski's conduct by accepting the lead and referral generated as a result of Premier and Bobski's illegal telemarketing conduct.

30.     For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

31.     In 2008, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations.

32.     The FCC has instructed that sellers such as Plan4Life may not avoid liability by outsourcing telemarketing to third parties, such as Premier and Bobski:

[A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "sellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (cleaned up).

33.     In 2013, the FCC held that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common

law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *Id.* at 6574 ¶ 1.

34.    Plan4Life is liable for telemarketing calls placed by Premier and Bobski and transferred to and using Plan4Life's name to generate customers for Plan4Life, including the Plaintiff.

35.    Plan4Life was interested in hiring a lead generator that could make phone calls to potential customers, vet potential clients, and work up life insurance deals by taking advantage of an outsourced sales process, including collecting personal information that would then be sold to Plan4Life so that Plan4Life could ultimately sell its policies.

36.    To do so, it hired Premier and Bobski to orchestrate an *en masse* telemarketing campaign that incentivized them to work up life insurance deals that met Plan4Life's criteria.

37.     To that end, the indicia of the calls, and the questions asked, including the Plaintiff's hobbies, level of coverage desired, and desired beneficiaries, were all criteria that Plan4Life instructed Premier and Bobski to inquire of and only sell them leads that met those criteria.

38.    Plan4Life controlled the day-to-day activities of Premier and Bobski by allowing them to work up life insurance deals on their behalf.

39.    Plan4Life also could have prohibited Premier and Bobski from using generating leads based on calls placed to numbers on the Do Not Call Registry.

40.    It did not.

41.    Finally, Plan4Life could have terminated Premier and Bobski once it learned of Premier and Bobski's illegal marketing conduct.

42.    It did not.

43.    A reasonable seller would investigate into the reasons why their marketer would be calling numbers using highly illegal calls to numbers on the Do Not Call Registry.

44.    It did not.

45.    Plan4Life hired Premier and Bobski without a proper investigation and did not terminate them when they were informed of Premier and Bobski's illegal calling conduct.

46.    As such, they knowingly ratified Premier and Bobski's conduct.

47.    Plan4Life accepted the Plaintiff's lead and then utilized it for a benefit by continuing to promote its services to her.

48.    The 2013 FCC ruling holds that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *In re DISH Network*, 28 FCC Rcd. 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the

telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

49.    Defendant Bobski, by his own admission, then personally then went off and arranged to hire the outsourced agents in Pakistan as authorized by Plan4Life to make the calls complained of herein.

50.    Defendant Bobski may be personally liable for the acts alleged in this Complaint pursuant to 47 U.S.C. § 217 of the TCPA, which reads, inter alia: "[T]he act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user *as well as of that person*." 47 U.S.C. § 217 (emphasis added).

51.    Bobski personally directed the TCPA-violative conduct at issue because he personally went off and hired the offshore, outsourced agents contemplated by his agreement with Plan4Life. He personally took responsibility for the calling conduct by sending the aforementioned email to Plaintiff, as well as defending the actions of the agents he hired.

52.    Bobski was also the individual responsible for drafting, setting, implementing, and controlling this illegal marketing strategy, including the use of

illegal automated calls to numbers on the Do Not Call Registry, the hiring of the

talent to work up those leads, and the other works involved in placing such calls, as

well as its strategy of obsfucating corporate identity, including the identity of the

Parkistani individuals identified as "Mr. Haris" and "TeleLance Marketing."

53.     The foregoing facts demonstrate that Bobski had direct, personal

knowledge of and participation in the conduct and course of conduct complained

of which violated the TCPA.

54.     Plaintiff and all members of the Class, defined below, have been

harmed by the acts of Defendants because their privacy has been violated and they

were annoyed and harassed.  Plaintiff and the Class Members were also harmed by

use of their telephone power, network bandwidth, and the intrusion on their

telephone that occupied it from receiving legitimate communications.

## CLASS ACTION ALLEGATIONS

55.     Plaintiff bring this action on behalf of herself and the following class

(the "Class") pursuant to Federal Rule of Civil Procedure 23.

**Telephone Consumer Protection Act Do Not Call Registry Class:**
All persons in the United States whose (1) telephone numbers were on
the National Do Not Call Registry for at least 31 days, (2) but who
received  more  than  one  telemarketing  calls  from  or  on  behalf  of

Defendants (3) within a 12-month period (4) from the four years prior to the filing of the complaint through the date of trial.

56.     Defendants and its employees or agents are excluded from the Class. Plaintiff reserves the right to modify or amend the Class definition, as appropriate, during the course of this litigation.

57.     Plaintiff brings all claims in this action individually and on behalf of Class Members against Defendants.

**Numerosity**

58.     Members of the Class are so numerous that their individual joinder is impracticable.

59.     On information and belief, based on the technology used to call Plaintiff, which is used to make calls *en masse*, Members of the Class number in the thousands.

60.     The precise number of Class Members and their identities are unknown to Plaintiff at this time but may be determined through discovery.

61.     Class Members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants.

**Commonality**

62.    Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual Class Members.

63.    Common legal and factual questions include, but are not limited to, whether Defendants have violated the Telephone Consumer Protection Act and whether Class Members are entitled to actual and/or statutory damages for the aforementioned violations.

**Typicality**

64.    The claims of the named Plaintiff are typical of the claims of the Class because the named Plaintiff, like all other Class Members, received unsolicited telephonic sales calls from the Defendants without giving them her consent to receive such calls.

**Adequacy of Representation**

65.    Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class Members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously.

66.    The interests of Class Members will be fairly and adequately protected by Plaintiff and her counsel.

**Superiority**

67.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class Members.

68.     Many of the Class Members likely lack the ability and/or resources to undertake the burden and expense of individually prosecuting what may be a complex and extensive action to establish Defendants' liability.

69.     Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system.  This strain on the parties and the judicial system would be heightened in this case, given the complex legal and factual issues at play.

70.     Individualized litigation also presents a potential for inconsistent or contradictory judgments.

71.     In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability.

72.     Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I
### Telephone Consumer Protection Act
### (Violations of 47 U.S.C. § 227)
### (On Behalf of Plaintiff and the National Do Not Call Registry Class)

73.    Plaintiff repeats and incorporates the allegations set forth in paragraphs 1 through 72 as if fully set forth herein.

74.    The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making telemarketing calls, except for emergency purposes, to the Plaintiff and the Class despite their numbers being on the National Do Not Call Registry.

75.    The Defendants' violations were negligent, willful, or knowing.

76.    As a result of Defendants' and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of between $500 and $1,500 in damages for each and every call made.

77.    Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants from making telemarketing calls to numbers on the National Do Not Call Registry, except for emergency purposes, in the future.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A.      Injunctive relief prohibiting Defendants from calling telephone numbers advertising their goods or services, except for emergency purposes, to numbers on the National Do Not Call Registry in the future;

B.      That the Court enter a judgment awarding Plaintiff and all class members statutory damages of $500 for each violation of the TCPA and $1,500 for each knowing or willful violation;

C.      An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class the Court deems appropriate, finding that Plaintiff are a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class; and

D.      Such other relief as the Court deems just and proper.


## **JURY DEMAND**

Plaintiff request a jury trial as to all claims of the complaint so triable.

Dated: April 29, 2025                   PLAINTIFF, individually and on behalf of all
                                        others similarly situated,


                                        */s/ Andrew Roman Perrong*
                                        Andrew Roman Perrong, Esq.
                                        PA Bar #333687 (PHV)
                                        Perrong Law LLC
                                        2657 Mount Carmel Avenue
                                        Glenside, Pennsylvania 19038
                                        Phone: 215-225-5529 (CALL-LAW)
                                        Facsimile: 888-329-0305
                                        a@perronglaw.com



                                        *Attorney for Plaintiff and the Proposed Class*

                                        */s/ Dana J. Oliver*
                                        Dana J. Oliver, Esq. (SBN: 291082)
                                        dana@danaoliverlaw.com
                                        OLIVER LAW CENTER, INC.
                                        8780 19th Street #559
                                        Rancho Cucamonga, CA 91701
                                        Telephone:  (855)384-3262
                                        Facsimile:  (888)570-2021

                                        *Local Counsel for Plaintiff and the Proposed Class*

CLASS ACTION COMPLAINT
*Bland v. Plan4Life Insurance, LLC*
-17-